UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 13 CIV 4523

-----------------------------------------------------------

LUZ ORTIZ,

               Plaintiff,

v.

GREAT ATLANTIC PARTNERS, LLC,
and
NISSAN MOTOR ACCEPTANCE CORPORATION,

               Defendants.

-----------------------------------------------------------

**COMPLAINT**

**AND JURY DEMAND**



## INTRODUCTION

1. This is an action brought by an individual consumer under the Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, New York General Business Law § 350, and for common law Fraud, Breach of Contract and Rescission/Mistake, seeking money damages, injunctive relief, and declaratory judgment.

2. Specifically, Plaintiff Luz Ortiz brings suit based on the illegal, unfair, abusive and deceptive practices employed by Defendants regarding an automobile purchase made on July 2, 2012, including but not limited to altering the consumer's contract after the fact and forging her signature on same; failing to provide her with numerous required disclosures; charging her more than the advertised price for the vehicle without her knowledge; and adding a warranty to the vehicle without the consumer's knowledge or permission, at additional cost.

## JURISDICTION AND VENUE

3.      Jurisdiction is based on 15 U.S.C. § 1640 and 28 U.S.C. § 1337.

4.      The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201 and § 2202.

5.      This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the property that is the subject of the action is situated in this District.

## THE PARTIES

7.      Plaintiff Luz Ortiz ("Plaintiff") is a resident of Westchester County, New York.

8.      Defendant Great Atlantic Partners, LLC, d/b/a Advantage Nissan ("Advantage") is a domestic limited liability company operating under the laws of New York, whose principal place of business is located at 939 Old Country Road, Westbury, NY 11590.

9.      Defendant Nissan Motor Acceptance Corporation ("NMAC") is a corporation incorporated under the laws of California and which is authorized to do business in New York.

10.      NMAC is the assignee of a Retail Installment Contract between Plaintiff and Advantage, and therefore, is liable for claims asserted against the Dealership under State and Federal law.

## FACTS

### Purchase of a Prior Automobile from Advantage

11.      In or about November of 2011, Plaintiff received a mailing from Advantage, telling her that she could purchase a car from Advantage, even though she had recently undergone a discharge of her debts through bankruptcy.

12.     Despite the fact that Plaintiff is and at all relevant times was a resident of Westchester County, New York, and Advantage is located in Westbury, Long Island, Plaintiff traveled to Advantage to purchase a car, based on the representations made in the ad.

13.     In or about November of 2011, Plaintiff purchased a new (model year 2012) Nissan Sentra from Advantage.  She received no documents whatsoever regarding the purchase of the Nissan Sentra.

14.     Plaintiff's payments for the Nissan Sentra were $383.80 per month.

15.     A salesman employed by Advantage, told Plaintiff that she should return to Advantage in eight months and Plaintiff would be able to obtain a "better deal."

Negotiating the Sale of the Vehicle

16.     On or about July 2, 2012, Plaintiff indeed did return to Advantage, to obtain the "better deal."

17.     On that date, Plaintiff agreed to trade in her 2012 Nissan Sentry and purchase a new 2012 Nissan Rogue AWD ("the Vehicle") from Advantage, through Advantage Salesman Malvin Garcia, upon being reassured that she would be getting a much better deal.

18.     The Vehicle had a prominent sticker price on the car which read $25,625.

19.     Malvin Garcia told Plaintiff that she would be charged the sticker price.

20.     Further Malvin Garcia told her that, by trading in the 2012 Nissan Sentra, she would pay a total of only $1,000 more for the Vehicle over the length of the loan than she would have paid if she kept the Nissan Sentra.

21.     Malvin Garcia turned Plaintiff over to a man named Jason, another employee of Advantage, to arrange for financing the Vehicle.

22.     Jason told Plaintiff that her monthly payments would be $545/month for the first four months and would then (after those first four months) drop to $400/month for the remainder of the loan.

23.     Plaintiff told Jason that she could not afford to make $545/month payments, and he once again reassured her that the payment amount would drop after four months.  Jason pointed out that her prior car payments for the Nissan Sentra were $383.80 per month, just $16.20 per month less than the $400 per month that Plaintiff would be paying, after the first four months.

24.     Jason told Plaintiff that the car purchase would improve her credit, because she would be establishing a payment record in her own name.

25.     Plaintiff's friend, Ana Sorto ("Ms. Sorto") had accompanied Plaintiff on her trip to Advantage.

26.     Advantage told Plaintiff that she would require a co-signer for her loan.

27.     Ms. Sorto agreed to be Plaintiff's co-signer.

28.     Neither Plaintiff nor Ms. Sorto have strong English language skills, and all discussions were in Spanish, but the papers presented to them were in English.

29.     On July 2, 2012, Plaintiff and Ms. Sorto signed various papers and although Plaintiff requested copies of them, Plaintiff was given no copies of any of the papers she had signed.

Lowering the Monthly Payments

30.     Plaintiff dutifully paid the required $545/month for four months, at which time she returned to Advantage in or about late November of 2012 to see about lowering her monthly payments.

31.     Plaintiff was told by others at Advantage that Jason had recently been fired.

32.    Advantage told Plaintiff that she had been taken advantage of by Jason but there was nothing Advantage could do about it, because of Plaintiff's poor credit history.

33.    Plaintiff once again asked for copies of the documents she had signed in July of 2012.

34.    Advantage told her that Advantage had not retained any documents related to the purchase of the Vehicle.

35.    Plaintiff discovered that she could obtain the documents related to her purchase of the vehicle by contacting NMAC.

36.    In or about December of 2012, Plaintiff obtained what purported to be the documents she and Ana Sorto had signed on July 2, 2012 from NMAC.

37.    Upon examining these documents, Plaintiff discovered that her name had been written on the documents on the signature lines but the signatures on the documents were not her signature and did not resemble her signature.   These documents appear to have been forged.

38.    The alleged signatures of Ana Sorto also appear to have been forged.

39.    Upon examining these documents, Plaintiff also discovered that the "owner" of her car was listed as her co-signer, Ana Sorto.   Plaintiff believed that she was to be listed as the purchaser of the Vehicle.

40.    Upon examining these documents, Plaintiff also discovered that she had allegedly purchased a warranty for $3,840, although she did not request a warranty, was not told anything about a warranty, and was never ever given any documentation about the warranty.

41.    Advantage did not discuss the warranty with Plaintiff at all when she was in the offices of the and did not tell Plaintiff that her car was already covered by a manufacturer's warranty.

42.    Upon examining these documents, Plaintiff also discovered that she was obligated by the terms of the "contract" to continue making payments at $545/month for the entire length of the loan, another 71 months.

43.    The Retail Installment Contract (RIC) that showed a cash sale price of $31,223.12, although the sticker price on the car was $25,625.

44.    The Truth in Lending Act mandatory disclosure boxes at the top of the RIC were filled in to show that Plaintiff would be paying a 4.99 % annual percentage rate; that the amount financed was $35,043.91, that the dollar amount of the finance charge was $5831.09; that the total of all payments was $40,875.00; and that the total cost of the Vehicle's purchase (including a down payment of $1580 was $42,455.50.

45.    Nowhere did the RIC disclose that the Plaintiff was forced to purchase the extended warranty and service contracts, nor are the costs of those items included in the finance charge.

### Subsequent Visits to the Dealership

46.    Plaintiff visited the dealership on various occasions after seeing the paperwork.  On each visit, she asked Advantage to take back the car and cancel her loan.  Advantage repeatedly refused.

47.    Plaintiff asked about the warranty and service contract and was told that they were necessary to include, or Plaintiff could not have obtained financing, given her poor credit history.

48.    Even after Plaintiff confronted the dealership with the paperwork showing that she was being charged for warranties, the dealership refused to provide her with any paperwork regarding the warranties.

49.    At all relevant times Defendants acted willfully and in bad faith.

50.    The unlawful actions described herein harmed Plaintiff.

## COUNT I
### TRUTH IN LENDING ACT, 15 §§1601 et seq. ("TILA")

51.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

52.     Plaintiff's transaction as described herein was a consumer credit transaction within the meaning of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

53.     Defendants are creditors within the meaning of TILA and Regulation Z.

54.     The increase in the cash price of the vehicle from the price of $25,625 is a "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

55.     The cash price increase is attributable to the warranty that Plaintiff was required to purchase from the Dealership incident to the extension of credit to Plaintiff, and is a "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

56.     As a result of Defendants' failure to properly include these and/or other fees and charges as finance charges, the sale price, finance charge, amount financed, and APR disclosed in Plaintiff's RIC are all materially misstated, in violation of TILA and Regulation Z. e.g. § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

57.     In failing to provide Plaintiff with any documents whatsoever, Defendants failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z. e.g. 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, e.g. 12 C.F.R. § 226.17(a)(1).

58.     As a result of Defendants' incomplete, inaccurate, and materially misstated disclosures, Plaintiff has suffered actual damages, including but not limited to the warranty that Plaintiff did not want or need but which was rolled into her purchase as a condition of receiving financing.

59.   Had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the vehicle on the terms and conditions imposed on her by the Defendants.

60.   Additionally, had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would have sought and obtained alternate, lower cost financing.

61.   For all these reasons, Defendants are liable under TILA and Regulation Z (see, e.g. 15 U.S.C. §§ 1640 and 1641) for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that they have violated TILA and Regulation Z, and for such other or further relief as the Court deems appropriate.

## COUNT II
## MAGNUSSON MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. §§ 2301 et seq.

62.   Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

63.   Defendants, collectively, are a "supplier" and/or "warrantor" within the meaning of the MMCWA.

64.   Plaintiff is a "consumer," as that term is defined in the MMWA.

65.   The vehicle sold to Plaintiff is a "consumer product" within the meaning of the MMWA.

66.   There is no dispute resolution mechanism which applies to Plaintiff's warranty dispute.

67.   In the alternative, Defendants have no dispute resolution mechanism which is enforceable under the MMWA and, also in the alternative, Plaintiff's repeated good-faith attempts to resolve any dispute with Defendants, which were rebuffed, constitute compliance with any reasonable dispute resolution requirement.

68. Defendants violated the MMWA and its implementing regulations by failing to clearly and conspicuously make disclosures required under the MMCWA and its implementing regulations.

69. Defendants violated the MMWA and its implementing regulations (e.g. 16 C.F.R. 701.3) by failing to disclose, inter alia, the terms, coverage, and procedures of a warranty in clear statements in a single document. For example, and without limitation:

   i. At the time of the transaction, Defendants did not provide any disclosures regarding the cost of the warranty,

   ii. At the time of the transaction Defendants did not provide disclosures regarding any of the terms of the warranty.

70. Other than in the information provided to Plaintiff by NMAC, showing that a warranty was paid for and financed as a part of the deal, Plaintiff has no information whatsoever about the warranty and has received nothing about the warranty in writing.

71. Plaintiff has no way of knowing whether a warranty policy was actually taken out or if instead she was billed for a warranty that does not exist.

72. As a result of these violations, Plaintiff is entitled to cancel and rescind the retail installment contract and all warranties or in the alternative, to revoke acceptance , and are entitled to actual damages and declaratory judgment that Defendants' practices violate the MMWA, and reasonable attorney's fees, costs and expenses, pursuant to the MMWA.

## COUNT III
## FRAUD

73. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

74. Defendants intentionally and fraudulently concealed from Plaintiff that Defendants structured the vehicle purchase and loan transaction to obligate Plaintiff to a retail installment contract requiring Plaintiff to pay more than $10,000 than was represented in the transaction.

75. As part of this fraudulent scheme, Defendants intentionally and fraudulently represented that Plaintiff's monthly payments would fall by $145 per month after the first four months, meaning that over the course of the loan, Plaintiff would be forced to pay back $10,295 more than she reasonably believed she would be required to pay.

76. As part of this fraudulent scheme, Plaintiff was required to purchase a warranty in order to qualify for financing to purchase the Vehicle.

77. As part of this fraudulent scheme, Defendants intentionally and fraudulently forged Plaintiff's name and that of Ana Sorto on documents which Plaintiff and Ana Sorto never saw or signed.

78. As part of this fraudulent scheme, Defendants intentionally and fraudulently induced Plaintiff to purchase a warranty about which she received no paperwork, which was unnecessary for the purchase of a new car, and which she was wholly unaware of until after the fact.

79. When questioned about the warranty, the dealership represented to Plaintiff that the purchase of this warranty was necessary for her to obtain financing.

80. Plaintiff justifiably relied upon each of Defendants' misrepresentations of material facts, as a result of which she sustained losses and damages.

81. Had Plaintiff not been misled by Defendants, she never would have agreed to the vehicle purchase transaction.

82.    As a result of Plaintiff's reasonable reliance upon Defendants misrepresentations, Plaintiff has been damaged by having traded in a car for which she was obligated to pay $383.80 per month and instead found herself obligated to pay $545 per month, a difference of $12,225, and as a result, Plaintiff is entitled to actual and punitive damages, attorneys fees, and costs and expenses.

## COUNT IV
### NYGBL § 350 (Unlawful False Advertising)

83.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

84.    The acts and practices set forth above, including but not limited to misrepresenting the sale price of the vehicle by assuring Plaintiff that the sticker price was the actual price of the car, also constitute violations of NYGBL § 350,  which makes false advertising unlawful, independent of whether these acts and practices constitute violations of any other law

85.    This false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

86.    Under NYGLB § 350, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

87.    The Vehicle showed a Manufacturer's Suggested Retail Price of $25,625.00. This sticker price is "advertising," as defined by NYGBL§ 350.

88.     Specifically, Defendants falsely advertised the vehicle's price because they hid the true cost to the consumer of purchasing the car. Defendants did so by increasing the sales price of the vehicle from the amount advertised, both by upping the price in the contract and by adding a warranty.

89.     Defendants' placing a sticker price on the Vehicle showing a price of $25,625.00, followed by listing the sale price on the RIC as $31,223.12 then followed by adding on another $3840.00 in warranties over and above the stated price in order to obtain financing, taken together, represent the Defendant's false advertising.

90.     Defendants' false advertising was done knowingly and willfully and committed in bad faith.

91.     As a result of these violations of NYGBL §350, Plaintiff suffered actual damages including but not limited to the cost of the warranties and service contracts that were not included in the advertised price but which she was forced to purchase.

92.     For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages , three times the actual damages up to $10,000, costs and reasonable attorneys fees pursuant to NYGBL § 350.


*[rest of page left intentionally blank*

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

    a.  On COUNT I, TRUTH IN LENDING ACT, judgment against Defendants for statutory damages, actual damages, attorney's fees, litigation expenses and costs, declaratory judgment that they have violated TILA and Regulation Z, and such other or further relief as the Court deems appropriate;

    b.  On COUNT II, MAGNUSON MOSS WARRANTY ACT ("MMWA"), judgment against Defendants, cancellation and rescission (or in the alternative revocation of acceptance of) the contract for the vehicle and the contract for the warranty, and actual and punitive damages, and reasonable attorneys fees, costs and expenses, declaratory judgment that Defendants have violated the MMWA, as well as such other or further relief as the Court deems appropriate;

    c.  On COUNT III, FRAUD, judgment against Defendants, actual damages, punitive damages, costs and reasonable attorneys fees;

    d.  On COUNT IV, NYGBL § 350, judgment against Defendants, injunctive relief, actual damages, three times the actual damages up to $10,000, costs and reasonable attorneys fees pursuant to NYGBL § 350(e), declaratory judgment that Defendants' have engaged in false advertising and such other or further relief as the Court deems appropriate;

    e.  Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated:  June 28, 2013
       New York, New York

                        Respectfully Submitted,

                        Peter T. Lane, Esq.
                        Elizabeth A. Shollenberger, Esq.
                        Schlanger & Schlanger, LLP
                        *Attorneys for Plaintiff*
                        343 Manville Road
                        Pleasantville, New York 10570
                        Ph: 914-946-1981, ext. 103
                        Fx: 914-946-2930
                        Peter.lane@schlangerlegal.com